UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
DONNA MCCULLOUGH,

              Plaintiff,

    - against -

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-5810 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Donna McCullough brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 10, 12.) Plaintiff seeks an order remanding this matter for further administrative proceedings, and the Commissioner asks the Court to affirm the denial of Plaintiff's SSI claim. For the reasons that follow, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum & Order.

## BACKGROUND

### I. Procedural History

On February 24, 2016, Plaintiff filed an application for SSI, alleging disability beginning on August 1, 2012. (Tr. 199–204, 230.)[1] On March 30, 2016, Plaintiff's application was initially denied. (Tr. 78–80.) On May 27, 2016, Plaintiff filed a request for a hearing before an

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript. (Dkt. 9.)

1

administrative law judge ("ALJ"). (Tr. 84.) On April 23, 2018, Plaintiff appeared with counsel before ALJ Charles Woode. (Tr. 34–62.) In a decision dated June 8, 2018, the ALJ determined that Plaintiff was not disabled under the Social Security Act (the "Act") and was not eligible for SSI. (Tr. 7–24.) On August 13, 2019, the ALJ's decision became final when the Appeals Council of the SSA's Office of Appellate Operations denied Plaintiff's request for review of the ALJ decision. (Tr. 1–6.) Thereafter, Plaintiff timely[2] commenced this action.

## II.     The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a severe impairment. *Id.* § 416.920(a)(4)(ii). An impairment is severe when it "significantly limit[s] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 416.922(a). If the impairment is not

---

[2] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on August 18, 2019, and that, because Plaintiff filed the instant action 58 days later on October 15, 2019, it is timely. (*See generally* Complaint, Dkt. 1.)

2

severe, then the claimant is not disabled. However, if the impairment is severe, the ALJ proceeds to the third step, which considers whether the impairment meets or equals one of the impairments listed in the Act's regulations (the "Listings"). *Id.* § 416.920(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App. 1. If the ALJ determines at step three that the claimant has one of the listed impairments, then the ALJ will find that the claimant is disabled under the Act. On the other hand, if the claimant does not have a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC") before continuing with steps four and five. The claimant's RFC is an assessment which considers the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." *Id.* § 416.945(a)(1). The ALJ will then use the RFC determination in step four to determine if the claimant can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If the answer is yes, the claimant is not disabled. Otherwise the ALJ will proceed to step five where the Commissioner then must determine whether the claimant, given the claimant's RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise the claimant is disabled and is entitled to benefits. *Id.*

In this case, after finding that Plaintiff has not engaged in substantial gainful activity since February 24, 2016, her application date, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease, degenerative joint disease of the shoulder, anxiety, depression, and post-traumatic stress disorder ("PTSD"). (Tr. 12.) The ALJ then progressed to the third step and determined that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR

3

Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." (Tr. 13.)

Moving to the fourth step, the ALJ found that Plaintiff maintained the RFC

> to perform light work[3] as defined in 20 CFR 416.967(b) except [that] [Plaintiff] can occasionally stoop, kneel, crawl, crouch, climb ramps or stairs, and operate push or pull controls with the right upper and left lower extremities. She is unable to reach overhead with the right upper extremity, and cannot climb ladders, ropes, or scaffolds. [Plaintiff] is to avoid concentrated exposure to vibration and hazards such as unprotected heights and dangerous machinery. She requires the opportunity to sit momentarily after remaining standing for between thirty and sixty minutes. [Plaintiff] remains able to perform simple routine tasks in low stress work environments, specifically, environments with only occasional decision-making and occasional changes in work setting. [Plaintiff] can maintain occasional or superficial interaction with co-workers and supervisors, but should not have contact with the public.

(Tr. 14.)

Based upon the RFC finding, the ALJ determined that Plaintiff was unable to perform "any past relevant work," including "as a home attendant, a semi-skilled position performed at a medium exertional level; and as a janitor, a semi-skilled position performed at a medium exertional level." (Tr. 18.) However, the ALJ found that Plaintiff could perform other jobs in the national economy, such as small products assembler, bagger, and marker. (Tr. 20.) The ALJ accordingly concluded that Plaintiff was not disabled. (Tr. 20.)

---

[3] According to the applicable regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

4

**LEGAL STANDARD**

Unsuccessful claimants for benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks, alterations, and citation omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (citation omitted). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (noting that "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision" (internal quotation omitted)). Ultimately, the reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence[,]" *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted), and, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld[,]" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

**DISCUSSION**

Plaintiff argues that (1) the ALJ's denial of benefits was not supported by substantial evidence because the ALJ misinterpreted the opinion of "Dr. [Stephen] Rodgers" and improperly

5

discounted the opinion of treating psychiatrist Dr. Edita Raagas, M.D. (Plaintiff's Memorandum of Law ("Pl.'s Mem."), Dkt. 11, at 9–15), and (2) alternatively, the case should be remanded for a new hearing because, in light of the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018), ALJ Woode was appointed in violation of the Appointments Clause of the United States Constitution (*id.* at 15–19). The Commissioner responds that (1) the ALJ's opinion was supported by substantial evidence because (a) though the ALJ and Plaintiff refer to Stephen Rodgers as "Dr. Rodgers," Rodgers was a nurse practitioner ("NP"), not a medical doctor, and thus his opinion was entitled to no deference (Memorandum of Law in Support of the Commissioner's Cross-Motion for Judgment on the Pleadings ("SSA Br."), Dkt. 13, at 11–13), (b) the ALJ properly discounted the opinion of Dr. Raagas (*id.* at 13–15), and (2) Plaintiff forfeited her Appointments Clause argument by not raising it before the ALJ or the Appeals Council (*id.* at 16–24).

The Court agrees that the ALJ improperly weighed the opinion of Dr. Raagas in violation of the treating physician rule and mischaracterized the opinion of NP Rodgers, and thus the ALJ's decision was not supported by substantial evidence. Because the Court remands on these grounds, it declines to consider Plaintiff's Appointments Clause arguments, raised for the first time before this Court. *See Gonnella v. United States Sec. & Exch. Comm'n*, 954 F.3d 536, 543–46 (2d Cir. 2020) (finding forfeiture of Appointments Clause challenge raised for the first time in federal court); *see also Guzman v. Berryhill*, No. 15-CV-3920 (VB) (LMS), 2018 WL 3387319, at *22 (S.D.N.Y. June 12, 2018) ("Although it appears that the Second Circuit has not yet ruled on this precise issue, a number of district courts in this Circuit have found that failure to raise an issue before the ALJ waives that issue's review by the District Court." (collecting cases)), *report and recommendation adopted*, 2018 WL 3384444 (S.D.N.Y. July 11, 2018).

I.  **The ALJ Failed to Accord Proper Weight to the Opinion of Plaintiff's Treating Psychiatrist and Plaintiff's Self-Reported Limitations**

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule[4] of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks, alteration, and citations omitted). Under the treating physician rule, a treating source's opinion is given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). If the opinion of the treating physician is not given controlling weight, the ALJ must apply a number of factors in order to determine the opinion's proper weight. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). These factors include: (i) the frequency of examination as well as the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

In finding that Plaintiff had the RFC to perform light work, the ALJ summarized Plaintiff's medical records relating to her physical conditions, and found that "[a]lthough diagnostic testing results affirm the presence of [Plaintiff]'s disc and joint conditions, they fail to support [Plaintiff]'s assertion that these conditions are disabling." (Tr. 15; *see* Tr. 15–16.) According to the ALJ, his

---

[4] Under the "treating physician rule," an ALJ must defer "to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2009) (quotation omitted). Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim because the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); 20 C.F.R. § 404.1520(c). Because Plaintiff filed her SSI application on February 24, 2016, the ALJ was required to apply the treating physician rule. *See* 20 C.F.R. § 404.1520(c).

7

RFC determination was "influenced by the opinion of [Plaintiff]'s treatment provider, [NP] Rodgers," whose opinion the ALJ assigned "great weight as it is consistent with [Plaintiff]'s spinal, knee, and shoulder issues." (Tr. 17; *see* Tr. 563–65.) The ALJ also summarized Plaintiff's psychiatric treatment with Dr. Raagas, though ultimately assigned her opinion "limited weight." (Tr. 18.) In contrast, the ALJ "accepted [the] opinion of" consultative examiner ("CE") E. Kamin,[5] Ph.D., as "generally consistent with [Plaintiff]'s evidence available in the case." (Tr.18.) Ultimately, the ALJ concluded, Plaintiff "has not received the type of medical treatment one would expect for a totally disabled individual" for either her physical or mental conditions. (Tr. 17.)

In his RFC determination, the ALJ correctly notes that Plaintiff has had a treating relationship with "Dr. Raagas dating back to at least February of 2016." (Tr. 16 (citing Exhibit 2F/1, Tr. 394).) Although Plaintiff reported that her first visit with Dr. Raagas was in December 2015 (Tr. 234), this discrepancy is immaterial, since the ALJ recognized Dr. Raagas as a treating source. *See* 20 C.F.R. § 416.927(a)(2) (defining a "treating source" as an "acceptable medical source" who provides, or has provided, the claimant "with medical treatment or evaluation" and with whom the claimant has, or has had, "an ongoing treatment relationship").

In a psychiatric evaluation dated February 2, 2016, Dr. Raagas explained that Plaintiff "has a previous history of psychiatric treatment," "a previous history of suicide attempt[s]" that led to hospitalizations, "a history of alcohol abuse," and "a history of significant medical illness[,] and [wa]s under the care of Dr. Paul MacLung [sic]." (Tr. 394; *see* Tr. 395 (describing hospitalizations).) Plaintiff told Dr. Raagas that she (Plaintiff) "has been depressed all her life," and that she "[would] be okay for a while but symptoms then [would] come back." (Tr. 394.) Plaintiff's reported "[s]ymptoms included thinking of what happened to her as a child during

---

[5] Only CE Kamin's first initial was included in the record. (Tr. 68.)

8

the . . . abuse she suffered . . . . She state[d] she still has nightmares and flashbacks to the abuse and she cannot sleep at night. She cries all the time and feels depressed." (Tr. 394; *see* Tr. 395.) Dr. Raagas noted that Plaintiff was "cooperative and maintain[ed] good eye contact," had an appropriate affect "compatible with thought content and in full range," and that her "[m]ood [wa]s depressed." (Tr. 396.) She diagnosed Plaintiff with recurrent depression (moderate with no psychotic features) and PTSD, and recommended "[p]sychopharmacology targeted to relieve the symptoms of anxiety, depression and PTSD, in conjunction with individual therapy." (Tr. 396–97.)

On February 23, 2016, Dr. Raagas noted that Plaintiff had been receiving treatment at the New Horizon Counseling Center for anxiety, depression, and PTSD. (Tr. 393.) Dr. Raagas started Plaintiff on a treatment of Trazodone[6] and Sertraline,[7] and noted that Plaintiff was attending ongoing weekly therapy. (Tr. 401–02.) On March 8, 2016, Dr. Raagas continued Plaintiff on her treatment of Trazodone and Sertraline. (Tr. 401.) On March 6, 2018, Dr. Raagas noted "[n]o [s]ignificant [c]hanges" in, *inter alia*, Plaintiff's mood/affect, thought process/orientation, and behavior/function. (Tr. 505.) Plaintiff reported that she was "[s]till depressed and anxious," "[t]akes all her medications[,]" but "does not sleep well. Just l[ies] down in bed but does not sleep but sometimes will doze off at 5 AM." (Tr. 506.) Dr. Raagas diagnosed Plaintiff with schizoaffective disorder, depressive type. (Tr. 506.)

---

[6] Trazodone is a "medication [] used to treat depression." *Trazodone HCL*, WEBMD, https://www.webmd.com/drugs/2/drug-11188/trazodone-oral/details (last visited Mar. 31, 2021).

[7] Sertraline is in a "class of drugs called selective serotonin reuptake inhibitors" that helps treat, *inter alia*, depression, PTSD, and social anxiety disorder. *Sertraline*, MEDICINENET (10/18/2019), https://www.medicinenet.com/sertraline/article.htm#what_is_ zoloft_sertraline_ what_is_its_mechanism_of_action (last visited Mar. 31, 2021).

On May 15, 2018, Dr. Raagas completed a medical assessment form. (Tr. 566–67.) In assessing Plaintiff's ability to make occupational adjustments, Dr. Raagas rated Plaintiff as "fair"[8] in using judgment, and "poor"[9] in following work rules, relating to co-workers, dealing with the public, interacting with supervisor(s), dealing with work stresses, functioning independently, and maintaining attention/concentration. (Tr. 566.) In assessing Plaintiff's ability to make performance adjustments, Dr. Raagas rated Plaintiff as "poor" in understanding, remembering and carrying out complex job instructions, detailed but not complex job instructions, and simple job instructions. (Tr. 567.) In assessing Plaintiff's ability to make personal-social adjustments, Dr. Raagas rated Plaintiff as "fair" in maintaining personal appearance, and "poor" in behaving in an emotionally stable manner, and relating predictably in social situations. (Tr. 567.) Dr. Raagas justified her assessment of Plaintiff's limitations in these categories by explaining that Plaintiff "suffer[ed] from symptoms of schizoaffective disorder." (Tr. 566–67.)

In assigning "little weight to the opinion of Dr. Raagas," the ALJ found it "[n]otabl[e] [that] Dr. Raagas indicated that [Plaintiff] remained capable of managing her finances," and that "Dr. Raagas's treatment records from 2016 and 2018 describe improving psychological symptoms and stability with psychotropic medication." (Tr. 18.) The ALJ further noted "[t]he possibility [] that a doctor may express an opinion in an effort to assist a patient with whom [s]he sympathizes for various reasons," and that such possibilities are more likely where, as here, "the physician opinion in question departs substantially from the remainder of the medical record." (Tr. 18.)

---

[8] The form defined a rating of "fair" as indicating that the individual's "ability to function in this area is seriously limited, but not precluded." (Tr. 566.)

[9] The form defined a rating of "poor" as indicating that the individual had "[n]o useful ability to function in this area." (Tr. 566.)

When a treating source's opinion is not afforded controlling weight, "SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive," and "the ALJ must 'comprehensively set forth [their] reasons for the weight assigned to a treating physician's opinion.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)); *see also* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). These factors include: (i) the frequency of examination as well as the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors. *See Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *see also* 20 C.F.R. § 416.927(c)(2)–(6). As the Second Circuit has noted, federal courts "do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam).

The ALJ failed to provide good reasons for discounting Dr. Raagas's opinion, much less evaluate the factors set forth by the regulations. *See* 20 C.F.R. § 416.927(c)(2); *Greek*, 802 F.3d at 375. First, the Court cannot fathom how the observation that a claimant can "manag[e] her finances" undermines medical assessments as to the limitations on her ability to function in an interpersonal work environment. *See Doyle v. Apfel*, 105 F. Supp. 2d 115, 120 (E.D.N.Y. 2000) ("The activities of daily living that [the ALJ] relied upon, such as reading, watching TV, doing light household work, going out to dinner periodically, and taking occasional trips, are not indicative of an ability to satisfactorily perform a job . . . . It is improper to reject the testimony of

11

a treating physician based on consideration of such mundane activities, or for the ALJ to substitute his judgment for that of the treating physician as to the significance of a claimant's ability to perform such activities." (citing *Balsamo v. Chater*, 142 F.3d 75, 81–82 (2d Cir. 1998); *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 643 (2d Cir. 1983))).

Second, the ALJ's conclusion that the treatment records showed "stability with psychotropic medication" (Tr. 18) is contradicted by the records themselves, which show no improvement or perhaps even a worsening of Plaintiff's condition. As discussed, on March 6, 2018, Dr. Raagas noted "[n]o [s]ignificant [c]hanges" in Plaintiff's mood/affect, thought process/orientation, and behavior/function, among other things. (Tr. 505.) The doctor also noted Plaintiff's report that she was "*[s]till* depressed and anxious," "[t]akes all her medications[,]" but "does not sleep well." (Tr. 506 (emphasis added.) As a result of that examination, Dr. Raagas diagnosed Plaintiff with "schizoaffective disorder, depressive type" (*id.*), which suggests a worsening or more severe diagnosis than anxiety and depression. In addition, Plaintiff testified at the hearing before the ALJ that, though she was taking medication including oxycodone for pain, Trazodone, Sertraline, Risperdal,[10] Naprosyn,[11] and Xanax,[12] she was "in pain," could "hardly sleep because that's how much pain" she was in. (Tr. 42–43.) When asked whether the medications were effective, Plaintiff answered that the Trazodone was not, the pain medication

---

[10] "Risperdal is a prescription medicine used to treat the symptoms of schizophrenia, bipolar mania, bipolar disorder and irritability." *Risperdal*, RxLIST (11/9/2020), https://www.rxlist.com/risperdal-drug.htm (last visited Mar. 31, 2021).

[11] Naprosyn is a nonsteroidal anti-inflammatory drug used to treat pain. *Naprosyn Oral*, WEBMD, https://www.webmd.com/drugs/2/drug-1705-1289/naprosyn-oral/naproxen-oral/details (last visited Mar. 31, 2021).

[12] Xanax is a drug "used to treat anxiety and panic disorders." *Xanax*, WEBMD, https://www.webmd.com/drugs/2/drug-9824/xanax-oral/details (last visited Mar. 31, 2021).

"sometimes [] helps [] and sometimes" does not, and that despite the medication, she "can't sleep [] [a]nd [] will be hearing stuff." (Tr. 43.) The ALJ failed to account for this testimony or evaluate Plaintiff's credibility in making this testimony in concluding that Plaintiff showed "stability with psychotropic medication" (Tr. 18), and this conclusion cannot serve as good reason to discount the opinion of Dr. Raagas. *Cf. Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 350 (E.D.N.Y. 2010) ("Although it is the function of the Commissioner and not the reviewing court to evaluate a claimant's credibility, a 'finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record.'" (quoting *Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988))).

Finally, to the extent the ALJ theorized that Dr. Raagas's opinion purportedly "depart[ed] substantially from the remainder of the medical record" because Dr. Raagas "sympathize[d]" with Plaintiff (Tr. 18), the ALJ had a duty to "first ask the treating [source] to clarify the deficiencies [he] perceives in that opinion."[13] *Austin v. Comm'r of Soc. Sec.*, No. 18-CV-331 (PKC), 2019 WL 4751808, at *6 (E.D.N.Y. Sept. 30, 2019) (citation omitted); *see also Calzada v. Astrue*, 753 F. Supp. 2d 250, 277 (S.D.N.Y. 2010) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician." (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)); *Anauo v. Colvin*, No. 15-

---

[13] Furthermore, while an ALJ is entitled to disregard the opinion of a claimant's treating psychiatrist after giving the psychiatrist the opportunity to correct the deficiencies in her medical reports, the ALJ must make clear that this decision is based on conclusions made by other medical professionals, and not by the ALJ himself. *See Greek*, 802 F.3d at 375 ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."); *Hillsdorf*, 724 F. Supp. 2d at 347 ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

CV-933 (MAT), 2016 WL 7320068, at *6 (W.D.N.Y. Dec. 16, 2016) ("Thus, to the extent the ALJ believed that [the doctor]'s opinion was not supported by clinical findings, the ALJ had an obligation to develop the record by re-contacting the doctor.").

Accordingly, the Court finds that the ALJ failed to properly weigh the medical opinion of Dr. Raagas, and this error alone warrants remand. *See Greek*, 802 F.3d at 375 ("The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" (quoting *Burgess*, 537 F.3d at 129–30)). On remand, the ALJ should give proper weight to the medical opinion of Dr. Raagas, explain the basis for the weight being accorded to that opinion, and give proper consideration to Plaintiff's self-reported limitations and testimony regarding her pain. *See Lim v. Colvin*, 243 F. Supp. 3d 307, 317 n.7 (E.D.N.Y. 2017) (remanding case, given the claimant's subjective complaints of pain and reports of limited functionality, with the direction that "[t]hese stated limitations should be considered on remand").

## II. The ALJ Mischaracterized the Opinion of NP Rodgers

In his decision, the ALJ mistakenly referred to NP Rodgers as "Dr. Rodgers," and purported to assign "great weight" to his opinion.[14] (Tr. 17.) According to the ALJ, NP Rodgers "opined that [Plaintiff] was capable of lifting up to fifty pounds." (Tr. 17.) In fact, as Plaintiff points out, NP Rodgers opined in his May 8, 2018 evaluation that Plaintiff could never lift more than 20 pounds, and could only occasionally lift between zero and five pounds, five to ten pounds, or ten to twenty pounds. (Tr. 563.) Notwithstanding NP Rodgers's purported opinion that Plaintiff

---

[14] In the SSA regulations, nurse practitioners "are defined as 'other sources' whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order) (quoting 20 C.F.R. § 416.913(d)(1)). Therefore, while the ALJ need not have given NP Rodgers's opinion controlling weight, to the extent the ALJ considered NP Rodgers's opinion, he was not permitted to mischaracterize it. *See Lopez v. Berryhill*, 448 F. Supp. 3d 328, 342 (S.D.N.Y. 2020).

14

was capable of lifting up to fifty pounds, the ALJ "limited [Plaintiff] to light exertional level work in accommodation of her subjective pain complaints." (Tr. 18.)

However, according to the applicable regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). NP Rodgers's opinion itself suggests that Plaintiff might not be capable of even light work because she could only occasionally ("up to 1/3 of the time") lift up to ten pounds. (Tr. 563.) Thus, were the ALJ to accurately take into account NP Rodgers's opinion on Plaintiff's lifting capabilities, there would be further reason to doubt the ALJ's RFC determination. Remand is thus necessary to allow the ALJ to accurately account for NP Rodgers's opinion. *See Lopez*, 448 F. Supp. 3d at 342 ("[T]he ALJ may not ignore or mischaracterize evidence of a person's alleged disability." (citations omitted)).

In sum, the Court finds that remand is warranted to assign proper weight to the opinion of Plaintiff's treating psychiatrist, Dr. Raagas, pursuant to the treating physician rule, and accurately account for the opinion of NP Rodgers in determining Plaintiff's RFC.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2021
　　　Brooklyn, New York

15